UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ARTURO CRUZ,

         Plaintiff,

   -v-

THE CITY OF NEW YORK; POLICE OFFICER
EUGENE DONNELLY, 46th PRECINCT; and POLICE
OFFICERS "JOHN DOE" #1–10, individually and in their
official capacities,

         Defendants.
------------------------------------------------------------------X

15 Civ. 2265 (PAE)

OPINION & ORDER

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/19/16

PAUL A. ENGELMAYER, District Judge:

  Plaintiff Arturo Cruz brings this action against the City of New York ("the City"), Police Officer Eugene Donnelly (collectively, the "defendants"), and Police Officers "John Doe" #1–10 under 42 U.S.C. §§ 1983 and 1988 for violations of his civil rights and the Constitutions of New York and the United States. Defendants have filed a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) seeking partial dismissal, with prejudice, of the Complaint, specifically, plaintiff's claim for municipal liability against the City pursuant to *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658 (1978). For the reasons that follow, defendants' motion is granted.

I.  **Background**

   A.  **Factual Background**[1]

According to the Complaint, since August 2011, Cruz has lived in Apartment 3F at 1391 Nelson Avenue, Bronx, New York. Compl. ¶ 9. Since he began living there, there have been attempts to deliver unordered packages to his apartment, but he refused all deliveries. *Id.* ¶ 10.

On May 29, 2012, while Cruz was in his apartment, someone knocked on the door and stated that there was a delivery from Federal Express. *Id.* ¶ 11. Cruz opened the door slightly and stated that he had not ordered anything; however, while Cruz attempted to close the door, Officer Donnelly and other officers pushed their way into the apartment, threw Cruz to the ground, handcuffed him, and searched the apartment. *Id.* ¶¶ 12–13. Cruz remained handcuffed for approximately two hours, after which he was brought to the 46th Precinct and charged with criminal possession of a controlled substance. *Id.* ¶¶ 15–16. On October 4, 2012, the charges were dismissed by the District Attorney. *Id.* ¶ 17.

   B.  **Procedural History**

On March 26, 2015, Cruz filed the Complaint. Dkt. 1. The Complaint was brought under 42 U.S.C. §§ 1983 and 1988 for violations of Cruz's civil rights and the Constitutions of New York and the United States. Specifically, Cruz brought claims for (1) false imprisonment, (2) false arrest, (2A)[2] negligent treatment, (3) invasion of privacy, (4) civil rights violations, (5) negligence, (6) municipal liability, and (7) battery.

---

[1] The Court's account of the facts is drawn from the Complaint ("Compl."), Dkt. 1. For the purpose of resolving the motion by the defendants for judgment on the pleadings, the Court assumes all well-pled facts in the Complaint to be true, drawing all reasonable inferences in favor of the plaintiff. *See Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).

[2] The Complaint incorrectly lists this count, like the one for false arrest, as "Second Count." To maintain the numbering alignment with the counts that follow, the Court labels this count 2A.

On July 13, 2015, defendants answered. On November 25, 2015, defendants moved under Rule 12(c) for judgment on the pleadings, partially dismissing the complaint against the City "on the grounds that plaintiff has failed to state a claim against the City of New York pursuant to §1983," Dkt. 13, and filed a supporting memorandum of law, Dkt. 15 ("Defs. Br."). On December 7, 2015, Cruz filed a memorandum of law opposing this motion, Dkt. 16 ("Pl. Br."), and on December 14, defendants filed a reply, Dkt. 17 ("Defs. Reply").

## II. Legal Standards

### A. Motions for Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." A motion for judgment on the pleadings is governed by "the same standard" as a motion to dismiss under Rule 12(b)(6). *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010) (quoting *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009) (per curiam)); *accord L–7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011). Thus, on such a motion, the Court accepts all of the non-movant's factual allegations as true and draws all reasonable inferences in the non-movant's favor. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To survive a motion for judgment on the pleadings, a party must plead sufficient factual allegations "to state a claim for relief that is plausible on its face," *id.* at 570, meaning that the complaint must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Further, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "A grant of a motion pursuant to Rule 12(c) is proper 'if, from the pleadings, the moving party is entitled to judgment as a matter of law.'" *Dargahi v.*

*Honda Lease Trust*, 370 Fed. App'x 172, 174 (2d Cir. 2010) (summary order) (quoting *Burns Int'l Sec. Servs., Inc. v. Int'l Union*, 47 F.3d 14, 16 (2d Cir. 1995) (per curiam)).

"On a 12(c) motion, the court considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.'" *L–7 Designs, Inc.*, 647 F.3d at 422 (quoting *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009) (per curiam)). The Court may also review any document incorporated by reference in one of the pleadings. *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004). Finally, the Court may consider a document not specifically incorporated by reference but on which the complaint relies and which is integral to it. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

      **B.**    **Alleging Municipal Liability**

"[T]o hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)) (internal quotation marks omitted).

There are four ways to establish the existence of an official policy or custom, the first element of a *Monell* claim. A plaintiff may plead that the constitutional violation was caused by:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

Case 1:15-cv-02265-PAE   Document 18   Filed 01/19/16   Page 5 of 14

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted); *see also Spears v. City of New York*, No. 10 Civ. 3461 (JG), 2012 WL 4793541, at *11 (E.D.N.Y. Oct. 9, 2012).

Plaintiffs alleging the existence of a municipal policy or custom often point to the filing of other complaints and/or lawsuits bringing similar claims. Courts considering *Monell* claims have assigned different levels of significance to the filing of prior lawsuits. Some have suggested that non-adjudicated claims are irrelevant. *See Morris v. City of New York*, No. 12 Civ. 3959 (JG), 2013 WL 5781672, at *11 (E.D.N.Y. Oct. 28, 2013) ("The fact that two of the defendants as well as a non-defendant supervising officer have had civil suits brought against them in the past that resulted in settlements is not even evidence of wrongdoing, let alone that the City has a custom or policy that fosters or results in wrongdoing."). But others have held that prior complaints are relevant insofar as they may put a municipality on notice of possible or actual constitutional violations. *See Edwards v. City of New York,* No. 14 Civ. 10058 (KBF), 2015 WL 5052637, at *6 n.3 (S.D.N.Y. Aug. 27, 2015) (noting that although "[i]t is certainly not always the case that the fact of a series of suits alleging similar claims supports a *Monell* claim . . . the point is one of notice").

## III. Discussion

The first element of a *Monell* claim is the existence of an official policy or custom. The Sixth Count of the Complaint alleges that the City is liable for the actions of the individual police officers because the officers' actions "were carried out by the aforementioned individual defendants in their capacities as police officers and officials pursuant to the customs, policies, usages, practices, procedures, and rules of [the City] and the New York City Police Department [('N.Y.P.D.')], all under the supervision of ranking officers of said department." Compl. ¶ 52. Specifically, the customs alleged "include, but are not limited to, the following unconstitutional

practices: a) fabricating evidence against innocent persons erroneously arrested; b) imprisoning innocent persons wrongfully apprehended; [and] c) [i]mprisoning innocent persons notwithstanding the existence of credible evidence which exonerates the accused of any criminal wrongdoing." *Id.* ¶ 53.

Putting aside non-cognizable conclusory statements, *see Iqbal*, 556 U.S. at 678, the Complaint principally supports its *Monell* claim by alleging that "unconstitutional customs and practices may be inferred from repeated instances of similar wrongful conduct." *See* Compl. ¶ 54. The Complaint therefore appears to allege the element of an official policy or custom on the theory of a consistent and widespread practice; the Complaint does not, in contrast, plead facts tending to suggest or support the existence of a formal policy endorsed by the City, an action taken by a government official with authority to make municipal policy, or of a failure by policymakers to provide adequate training or supervision.

Cruz's allegation of repeated instances of similar wrongful conduct are supported in the Complaint by citation to eight civil rights actions filed against the City in the Southern and Eastern Districts of New York. *See id.* Other than the case name and case number, the Complaint provides no information about the cases it cites, no description of evidence adduced in those cases, and no explanation of how the cases, individually or taken together, demonstrate a consistent and widespread practice sufficient to constitute an unlawful policy or custom. The Court, nonetheless, has reviewed the publicly available dockets sheets for the cases cited by

Cruz,[3] as well as pertinent case filings for those cases,[4] including, where available, the complaints and amended complaints, dispositions on dispositive motions, and stipulations and orders of dismissal and/or settlement.[5]

The cases were filed between 2001 and 2006. All brought claims related to, *inter alia*, false arrest and malicious prosecution of the respective plaintiffs, who were arrested and

---

[3] *Douglas v. City of New York*, No. 03 Civ. 6475 (S.D.N.Y.); *Flood v. City of New York*, No. 03 Civ. 10313 (S.D.N.Y.); *Richardson v. City of New York*, 02 Civ. 3651 (E.D.N.Y.); *Stewart v. City of New York*, 05 Civ. 2375 (S.D.N.Y.) (consolidated with 06 Civ. 15490); *Taylor v. City of New York*, 01 Civ. 5750 (E.D.N.Y.); *Vasquez v. City of New York*, No. 05 Civ. 3552 (E.D.N.Y.); *Williams v. City of New York*, 05 Civ. 4013 (S.D.N.Y.); and *Burton v. City of New York*, No. 06 Civ. 6884 (S.D.N.Y.).

[4] The filings are generally available on the Southern District's and Eastern District's Electronic Case Filing system. Records for *Flood* were obtained in hard copy from the Records office for closed cases at the Southern District of New York Courthouse at 500 Pearl Street, New York, NY. Records for *Douglas*, however, are temporarily unavailable, according to the Records clerk, because they are in the process of being archived out-of-state. The *Douglas* case docket sheet reveals, however, that the case was brought in August 2003 and discontinued before resolution on the merits. The Court is confident that its decision would not be altered by reviewing the underlying filings in *Douglas*.

[5] The Court here provides a general overview of the cases, with specific citations only where quoting directly from specific documents or discussing issues unique to particular cases. The Court may properly consider the case docket sheets and filings because Cruz's Complaint, in citing the cases in support of his *Monell* claim, relies on them, *see Chambers*, 282 F.3d at 153, and because they are public court documents of which the Court may take notice, for the limited purposes of establishing that that the suits were filed, how they were disposed, and for the fact of the allegations made but not for the truth of what the allegations asserted. *See Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." (quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998)) (internal quotation marks omitted)).

charged, in all but one of the cases, with drug-related crimes.[6]  The arrests and charges were all the result of so-called "buy-and-bust" operations[7] conducted by the N.Y.P.D.

In addition to claims against individual officers, all of the cases alleged municipal liability against the City of New York.  However, in two cases, the claims against the City were dropped by the plaintiff before the case was resolved.[8]  The *Monell* allegations are generally similar across the cases cited.  Including those cases in which the municipal liability claims were dropped by the plaintiffs, four cases contained a nearly identical allegation to Cruz's regarding the custom or practice of "imprisoning innocent persons notwithstanding the existence of credible evidence which exonerates the accused of any criminal wrongdoing."  Compl. ¶ 53(c).[9] In addition, five cases contained allegations similar to "fabricating evidence against innocent persons erroneously arrested," and four had allegations similar to "imprisoning innocent persons wrongfully apprehended," Compl. ¶¶ 53(a) & (b); in the cases cited, however, these customs or practice were alleged to be specific to those arrested "during buy-and-bust operations."[10]  Like the present Complaint, a number of the cases rely on citations to prior lawsuits, specifically, the

---

[6] The plaintiff in *Williams* was charged with tampering with physical evidence and disorderly conduct.

[7] A buy-and-bust is a tactic by which an "officer, posing as a narcotics user, purchases the drugs, and the seller is arrested shortly thereafter."  *Ayala v. Speckard*, 131 F.3d 62, 64 (2d Cir. 1997).

[8] *See Taylor*, 01 Civ. 5750, Dkt. 20 (plaintiff conceded claims against City at oral argument on defendants' summary judgment motion); *Burton*, No. 06 Civ. 6884, Dkt. 6 (plaintiff voluntarily dismissed municipal liability claim).

[9] *E.g.*, *Williams*, 05 Civ. 4013, Dkt. 1 ¶ 66(c) (using the word "arresting" instead of "imprisoning").

[10] *E.g.*, *id.*, ¶¶ 66(a) & (b) (using the word "arresting" instead of "imprisoning").

same ones cited here, to attempt to support an inference that such customs or policies exist;[11] none point to other specific facts in support of their allegations of the existence of the customs or practices identified.

All of the cases cited settled short of adjudication on the merits. In each, the stipulation and order of settlement contained language to the effect that the settlement should not be deemed an admission of wrongdoing, and importantly, that "[n]othing contained herein shall be deemed to constitute a policy or practice of the City of New York or the New York City Police Department."[12]

Cruz's allegations, relying on citations to these cases, fall far short of establishing a custom sufficient to support a *Monell* claim. To be sure, "an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997). But the lawsuits cited by Cruz, without much more, do not plausibly suggest a "practice . . . so widespread as to have the force of law." *Id.*

Judge Karas's recent decision in *Tieman v. City of Newburgh*, No. 13 Civ. 4178 (KMK), 2015 WL 1379652 (S.D.N.Y. Mar. 26, 2015), is instructive. In *Tieman*, the complaint alleged that the City of Newburgh "'has a policy or practice of using excessive force when effectuating arrests, and fails to train and/or discipline its employees to prevent violations of arrestee's [sic] constitutional rights.'" *Id.* at *14. The complaint cited what it described as "an extensive history of lawsuits and other complaints," alleging that at least nine excessive-force suits were filed

---

[11] *See, e.g.*, *Vasquez*, No. 05 Civ. 3552, Dkt. 1, ¶ 69 (citing *Douglas, Flood, Richardson, Stewart,* and *Taylor*).

[12] *See, e.g.*, *Williams*, 05 Civ. 4013, Dkt. 20, ¶ 5.

against the city in the preceding five years—including five that involved, as the plaintiff's case did, allegations of unnecessary dog bites. *Id.* at *15. It further alleged that the City was on notice of the excessive force problem because of comments from citizens at public forums and because of a consulting group's report on the police department's practices. *Id.* at *3. Judge Karas, however, held that these pleadings were insufficient to suggest a widespread custom or practice. *Id.* at *17. He noted that none of the lawsuits cited by the plaintiff had "result[ed] in an adjudication of liability." *Id.* (alteration in original) (quoting *Walker v. City of New York*, No. 12 Civ. 5902 (PAC), 2014 WL 1259618, at *3 (S.D.N.Y. Mar. 18, 2014)). "Simply put," Judge Karas concluded, "the fact that there were allegations of thirteen instances of excessive force during arrests over four [or five] years (none of which involved findings or admissions of culpability) during which hundreds, if not thousands, of arrests were made does not plausibly demonstrate that the use of excessive force during arrest was so frequent and pervasive to constitute a custom." *Id.*

     The same logic is decisive here. None of the lawsuits cited resulted in an adjudication or admission of liability and the number of suits does not suggest a pervasive illegal practice. *See Walker*, 2014 WL 1259618, at *3 ("The paltry number of complaints (none resulting in an adjudication of liability), spread over a period so long in a city so large, hardly suggests the frequency or pervasiveness of the purported custom that is required to state a *Monell* claim."). Indeed, Cruz's claim of a municipal "custom" is even weaker than in *Tieman*. While the length of time spanned by the cited lawsuits (six years) is about the same as in *Tieman*, there is a significant gap—nine or more years—between the time the cited cases were filed and Cruz's initiating his suit. Furthermore, eight cases cited from a municipality (New York) far bigger than Newburgh, makes the number of cited cases particularly inadequate to demonstrate plausibly a

municipal custom.  *See also Calderon v. City of New York*, No. 14 Civ. 1082 (PAE), 2015 WL 5802843, at *15 (S.D.N.Y. Oct. 5, 2015) (dismissing a *Monell* claim that cited 16 cases against the City), *reconsideration in part granted on other grounds*, 2015 WL 6143711 (S.D.N.Y. Oct. 19, 2015).

The Court therefore holds that Cruz has failed to plausibly plead that the City has an official policy or custom, as demonstrated by a widespread and consistent practice, which led to the alleged violations of Cruz's federally protected rights.[13]

Cruz's arguments against dismissal are easily rejected.  First, Cruz attempts to re-characterize the relevant "policy and procedure" as the execution of "controlled deliveries of . . . narcotics in packages delivered to various apartments."  Pl. Br. 6.[14]  Cruz's Complaint, however, makes no mention of a policy of "controlled deliveries"; he cannot add such allegations in an opposition brief.  *See Olde Monmouth Stock Transfer Co., Inc. v. Depository Trust & Clearing Corp.*, 485 F. Supp. 2d 387, 393 (S.D.N.Y. 2007) ("It is long-standing precedent in this circuit that parties cannot amend their pleadings through issues raised solely in their briefs." (quoting *Fadem v. Ford Motor Co.*, 352 F. Supp. 2d 501, 516 (S.D.N.Y. 2005)) (alteration and internal quotation marks omitted)); *Lazaro v. Good Samaritan Hosp.*, 54 F. Supp. 2d 180, 184 (S.D.N.Y.

---

[13] Because the Court holds that Cruz has failed to adequately plead the first element of a *Monell* claim, the Court does not reach defendants' argument that Cruz also fails to adequately plead the second element, to wit, that the alleged policy or custom *caused* the denial of Cruz's federal or constitutional rights.  *See* Defs. Br. 6–7; Defs. Reply 3–4; *see also* Pl. Br. 8.

[14] Typically, a "controlled delivery" occurs when law enforcement has "lawfully discover[ed] . . . contraband in transit[, and] . . . rather than simply seizing the contraband or destroying it, [they deliver] the container to its consignee, allowing the container to continue its journey to the destination contemplated by the parties.  The person dealing in the contraband can then be identified upon taking possession of and asserting dominion over the container."  *United States v. Singh*, 811 F.2d 758, 760 (2d Cir. 1987) (quoting *Illinois v. Andreas*, 463 U.S. 765, 769 (1983)).

1999) ("[I]t is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss." (quoting *O'Brien v. Nat'l Property Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989)) (internal quotation marks omitted)).[15]

Second, *Askins v. Doe No. 1*, 727 F.3d 248 (2d Cir. 2013), on which Cruz relies, Pl. Br. 6–7, does not rescue Cruz's claim. "Establishing the liability of the municipality requires a showing that the plaintiff suffered a tort in violation of federal law *committed by the municipal actors* and, in addition, that their commission of the tort resulted from a custom or policy of the municipality." *Id.* at 253 (emphasis added). The key issue in *Askins* was whether a claim for municipal liability under § 1983 could be maintained where the plaintiff did not procure a judgment, or even could not pursue a claim, against the particular municipal actors who committed the alleged federal law tort. *See id.* at 252–55. In a portion of the opinion highlighted by Cruz, the Second Circuit ruled:

> But where the plaintiff has brought a timely suit against the municipality and has properly pleaded and proved that he was the victim of the federal law tort committed by municipal actors and that the tort resulted from an illegal policy or custom of the municipality, the fact that the suit against the municipal actors was untimely, or that the plaintiff settled with them, or abandoned the suit against them, is irrelevant to the liability of the municipality.

*Id.* at 254.

Cruz does not explain why this passage supports his opposition to the present motion. If his intent is to discount the significance of the fact that the cases he cites in support of his *Monell* claim all settled, his reliance is in error. The above passage holds that a plaintiff need not adjudicate a claim, or recover, against the particular municipal actor alleged to have committed the federal law tort to establish liability against the municipality. That is a separate issue from

---

[15] Moreover, the cases cited by Cruz in support of his *Monell* claim alleged actions and practices related to buy-and-bust operations, not controlled deliveries.

whether a plaintiff can allege specific facts, such as prior lawsuits, that make plausible the existence of a widespread and consistent practice—equivalent to a custom or policy—that caused the municipal actor's federal law tort. Where a prior lawsuit against a municipality or municipal actor was settled—especially where the settlement contains a denial of wrongdoing—and did not produce an adjudication establishing liability or wrongdoing, the prior lawsuit does not demonstrate that the prior unlawful action took place, and therefore is less able to support the allegation that there is a widespread practice or custom that violates federal law. Here, Cruz fails to cite to even a single instance in which the City, or an individual acting on its behalf, has been found to have committed a federal law tort along the lines alleged by Cruz. This significantly undermines the plausibility of his contention that the officers here were acting pursuant to an extant illegal practice, policy, or custom.

Third, and finally, Cruz argues that the motion should not be granted because the doctrine of qualified immunity does not apply to municipalities. Pl. Br. 7–8. However, defendants' motion does not invoke or rely on qualified immunity, but rather Cruz's failure to state a claim against the City under § 1983.

## CONCLUSION

For the foregoing reasons, the Court grants defendants' motion for partial judgment on the pleadings and dismisses, with prejudice, the Sixth Count of the Complaint for municipal liability against the City. The Clerk of Court is directed to terminate the motion pending at docket number 13.

13

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: January 19, 2016
       New York, New York