UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

ARTURO CRUZ,

                              Plaintiff,

              -v-

THE CITY OF NEW YORK, POLICE OFFICER
EUGENE DONNELLY, 46th PRECINCT, P.O.'s "JOHN
DOE" #1–10, individually and in their official capacities,

                            Defendants.

------------------------------------------------------------------X

15 Civ. 2265 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

This decision resolves a summary judgment motion in this case of alleged police misconduct. Plaintiff Arturo Cruz brings claims under 42 U.S.C. § 1983 and New York law, alleging that the City of New York (the "City"), New York City Police Department ("NYPD") Officer Eugene Donnelly, and unidentified NYPD officials violated his civil rights under, *inter alia*, the federal and New York State Constitutions. Cruz's claims include false arrest, malicious prosecution, excessive force, false imprisonment, negligence, invasion of privacy, and battery. The claims all arise from Cruz's arrest on March 29, 2012, at his Bronx home, and his ensuing criminal prosecution, which ended, on October 4, 2012, in dismissal. Dkt. 1 ("Compl.") at 3.

Defendants now move for summary judgment on all claims. They argue that (1) Cruz's state law claims are barred by his failure to file a notice of claim; (2) Cruz's claims against the "John Doe" defendants are time-barred; (3) as to the claims of false arrest and use of excessive force, that defendant Officer Eugene Donnelly, the only defendant implicated by Cruz's federal claims, lacked personal involvement in the relevant events; and (4) as to the claims of false arrest

and malicious prosecution, there was probable cause supporting Cruz's arrest and prosecution; and that Donnelly, in any event, is entitled to qualified immunity. For the following reasons, the Court grants summary judgment to defendants as to all of Cruz's claims, except for his malicious prosecution claim against Donnelly brought under § 1983.

## I.   Background[1]

### A.   Factual Background

Since August 2011, Cruz has lived at 1391 Nelson Avenue, Apartment 3F, in the Bronx, New York. Yalkut Decl., Ex. 1 ("Cruz Dep.") at 29–30. He testified that, between August 2011 and March 2012, he refused delivery of multiple letters and packages sent to that address but not addressed to him by name. *Id.* at 30–31.

On March 28, 2012, law enforcement officials at the Federal Express hub in Memphis, Tennessee, seized a package weighing 7.05 kilograms. Def. 56.1 at 1. An examination of the

---

[1] The Court draws its account of the underlying facts of this case from the parties' submissions in support of and in opposition to this motion, including: defendants' memorandum of law in support of the motion for summary judgment, Dkt. 31 ("Def. Br."); the declaration of Daniel Passeser in support of the motion for summary judgment, Dkt. 29 ("Passeser Decl."); plaintiff's memorandum of law in opposition to the motion for summary judgment, Dkt. 35 ("Pl. Br."); the declaration of Arlen S. Yalkut in opposition to the motion for summary judgment, Dkt. 36 ("Yalkut Decl."); defendants' reply memorandum of law, Dkt. 43 ("Def. Reply Br."); defendants' Local Rule 56.1 Statement, Dkt. 30 ("Def. 56.1"); plaintiff's response to defendants' Local Rule 56.1 Statement, Dkt. 37 ("Pl. Resp. 56.1"); and defendants' response to plaintiff's response to defendants' Local Rule 56.1 Statement, Dkt. 43-1 ("Def. Resp. 56.1"). Citations to a party's Rule 56.1 statement incorporate by reference the documents cited therein. Where facts stated in a party's Rule 56.1 statement are supported by testimonial or documentary evidence, and denied by a conclusory statement by the other party without citation to conflicting testimonial or documentary evidence, the Court finds such facts true. *See* S.D.N.Y. Local Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."); *id.* at 56.1(d) ("Each statement by the movant or opponent . . . controverting any statement of material fact[] must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").

package later revealed that it contained 10.3 ounces of cocaine. *Id.* A custody receipt from the Department of Homeland Security reflects that the package was addressed to Cruz at his home. Dkt. 29, Ex. A. A custody receipt from U.S. Customer Border Protection at the Memphis Federal Express Hub reflects the same. Dkt. 19, Ex. B.

On March 29, 2012, several NYPD officers, including Donnelly, executed a controlled delivery of the package to Cruz's apartment. Def. 51.6 at 2.

It is undisputed that the controlled discovery proceeded as follows: An individual knocked on the apartment door and told Cruz that he had a delivery from Federal Express. Cruz responded that he was not expecting a package. The individual told Cruz that the package was for Apartment 3F. At this point, Cruz opened the door.[2] As he did so, unidentified NYPD officers, not including Donnelly, entered the apartment with guns drawn. Inside the apartment, the unidentified NYPD officers slammed Cruz against a wall, handcuffed him, and threw him onto the ground. *Id.*

The parties dispute Donnelly's location during the controlled delivery. In his deposition, Donnelly testified that he waited outside the apartment building while another officer—whose identity Donnelly does not now recall—delivered the package, and that, while there, he then received a call over the radio stating that Cruz had signed for the package. Yalkut Decl., Ex. 2 ("Donnelly Dep.") at 8, 11. Cruz, however, contends that Donnelly was present during the delivery. For this proposition, Cruz relies on the fact that, in the state-court criminal complaint that Donnelly swore out against Cruz later that day, Donnelly attested under oath that he had personally seen Cruz sign for the package. *See* Pl. Resp. 56.1 at 3; Dkt. 29-8 ("Criminal

---

[2] The parties appear to agree that Cruz actually opened the door twice—once after hearing a knock, Def. 56.1 at 2; *see* Pl. Resp. 56.1 at 2; and a second time after learning that the package was addressed to his apartment, Def. 56.1 at 2; *see* Pl. Resp. 56.1 at 2.

Complaint") at 1 ("Deponent states that deponent observed defendant sign for a package that was addressed to defendant at the above stated address.").[3]  In the Criminal Complaint, Donnelly also attested: "Deponent further states that defendant in substance [stated] to deponent in reference to said package: I WAS SUPPOSED TO GIVE THIS PACKAGE TO SOMEONE ELSE." *Id.* (capitalization in original).  The sparse Criminal Complaint—which contains only four sentences of narrative and is little more than a page long—does not further elaborate on the delivery or on Cruz's arrest.

The parties agree that Donnelly thereafter entered the apartment.  They dispute, however, the events immediately preceding the entry.  Donnelly testified that he went to and entered the apartment after receiving the radio report that Cruz had signed for the package.  Donnelly Dep. 8–9.  Cruz, however, again relying on Donnelly's Criminal Complaint, claims that Donnelly was present during the arrest.  Pl. Resp. 56.1 at 4 (citing Criminal Complaint at 1).

It is undisputed that Donnelly ultimately recovered the package containing cocaine from Cruz's apartment and transported it, along with Cruz, to the 46th Precinct.  Def. 56.1 at 3; Def. Resp. 56.1 at 3.[4]

The same day, based on the delivery of the package containing cocaine, Cruz was charged with criminal possession of a controlled substance in the first and third degree and criminal facilitation in the fourth degree.  Def. 56.1 at 3.  Cruz was unable to make bail and

---

[3] Cruz, who apart from Donnelly appears to have been the only witness to the events of March 29, 2012 who was deposed, did not testify as to Donnelly's whereabouts at the time of the delivery.

[4] Cruz makes various allegations bearing on damages, including to the effect that during Cruz's detention in the apartment, Donnelly forbade him from taking medication for hypertension, Cruz Dep. 54–57, and that the officers' search of Cruz's apartment resulted in damage to his property, *id.* at 43–47.  These allegations are irrelevant to the pending summary judgment motion and the Court therefore does not elaborate on them.

remained in custody for two weeks, before being released on the motion of the District Attorney. Cruz Dep. 65–66.   No indictment of Cruz was ever returned.   On October 4, 2012, by motion of the District Attorney, all charges against Cruz were dismissed.   *Id.* at 67.

### B.   Procedural History

On March 26, 2015, Cruz filed the complaint in this case.   Dkt. 1 ("Complaint" or "Compl.").   In it, Cruz brought federal claims of false arrest, excessive force, and malicious prosecution under 42 U.S.C. § 1983, and state-law claims of false imprisonment, negligence, invasion of privacy, and battery.[5]   Before commencing this action, Cruz did not file a notice of claim with the New York City's Comptroller's Office.   *Id.*; Pl. Resp. 56.1. at 5.   On July 13, 2015, defendants filed an answer.   Dkt. 4.   On January 19, 2016, the Court granted defendants' motion for partial judgment on the pleadings and dismissed, with prejudice, Cruz's claim for municipal liability against the City pursuant to *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658 (1978).   Dkt. 18.

On May 23, 2016, defendants filed this motion for summary judgment.   Dkt. 28.   On June 17, 2016, Cruz filed a memorandum of law in opposition.   Dkt. 35.   On July 5, 2016, defendants filed a reply.   Dkt. 43.   On September 15, 2016, the Court held argument on the motion.

## II.   Applicable Legal Standards for a Motion for Summary Judgment

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   The movant bears the burden of demonstrating the absence of a question of material fact.   In making this determination, the Court must view all facts "in the

---

[5] The Complaint's precise causes of action were not fully clear, but Cruz's counsel clarified them as such during the April 25, 2016 pre-motion conference.   Defendants do not challenge counsel's clarification.

light most favorable" to the non-moving party. *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citation omitted). Rather, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).

"Only disputes over facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there are genuine issues of material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)) (internal quotation marks omitted).

## III.   Discussion

Defendants seek summary judgment on all of Cruz's claims, making, as noted, a variety of distinct arguments. The Court addresses these in turn.

### A.   State Law Claims

Defendants first seek summary judgment on all of Cruz's state-law claims—of false imprisonment, negligence, invasion of privacy, and battery—based on Cruz's failure to file a timely notice of claim.

Under New York General Municipal Law § 50-i(1), a plaintiff cannot bring a state tort law claim against the City or any City employee unless, within 90 days from the date the claim arose, "a notice of claim shall have been made and served upon the city." N.Y. Gen. Mun. L. § 50-i(1); *see Fincher v. Cty. of Westchester*, 979 F. Supp. 989, 1002 (S.D.N.Y. 1997) ("The notice of claim requirements apply equally to state tort claims brought as pendent claims in a federal civil rights action."). Cruz concedes that he did not file any such notice, Pl. Br. at 26, and indeed, that as of the September 15, 2016 argument on defendant's summary judgment motion, he still had not filed a notice of claim. *See* Transcript of Argument at 32. Although Cruz contends that "[t]he state law claims are closely connected to the federal claims against the defendants," he cites no authority that such a connection exempts him from the requirement to file a notice of claim. Pl. Br. at 26.

Accordingly, the Court must, and does, grant summary judgment to defendants on all of Cruz's state law claims.

**B.    Federal Claims Against John Doe Defendants**

Defendants also seek summary judgment on Cruz's federal claims against "John Doe" defendants because Cruz has not demonstrated any effort to discover the true names of these defendants, and because any attempt to do so at this stage would be untimely.

**1.    Indication of Effort**

Although "[u]sing 'Doe' in place of specifically naming a defendant does not serve to sufficiently identify the defendant, . . . [c]ourts typically resist dismissing suits against John Doe

7

defendants until the plaintiff has had some opportunity for discovery to learn the identities of responsible officials." *Coward v. Town & Vill. of Harriso*n, 665 F. Supp. 2d 281, 300 (S.D.N.Y. 2009) (internal quotation marks and citation omitted). Nonetheless, "[w]here a plaintiff has had ample time to identify a John Doe defendant but gives no indication that he has made any effort to discover the [defendant's] name, . . . the plaintiff simply cannot continue to maintain a suit against the John Doe defendant." *Id.* (internal quotation marks omitted).

Here, there is no indication that Cruz has made any effort to discover the Doe defendants' true names. Indeed, Cruz's opposition to defendants' motion for summary judgment does not even address the motion to as to the Doe defendants beyond making the vague assertion that "discovery would not have availed the plaintiff." Pl. Br. at 26. Cruz therefore cannot continue to maintain a suit against these defendants. *See Keesh v. Artuz*, No. 97 Civ. 8417, 2008 WL 3166654, at *2 (S.D.N.Y. Aug. 6, 2008) (dismissing complaint against Doe defendants where, "[e]ven after discovery, plaintiff ha[d] failed to identify" them); *Blake v. Race*, 487 F. Supp. 2d 187, 192 n. 1 (E.D.N.Y. 2007) (dismissing claims against Doe defendants where, "[t]hough discovery is complete in this case, plaintiff has failed to identify any of the unnamed defendants, or to present any evidence demonstrating their involvement in the infringing activity" and "plaintiff's opposition to defendants' motion for summary judgment does not specify the role of any unnamed defendants in the infringing conduct, nor does plaintiff indicate that he will be able to identify these unnamed defendants in the future"); *see also Diop v. City of New York*, 50 F. Supp. 3d 411, 415 n.1 (S.D.N.Y. 2014) (dismissing claims against Doe defendants where plaintiff "neither identified those defendants nor described their role in the conduct at issue in this case, and the deadline for joinder of additional parties ha[d] passed").

**2.    Ability to Amend**

Even were Cruz later to identify the Doe defendants, any amendment to add their names would by now be untimely.

A three-year statute of limitations applies to § 1983 claims filed in New York. *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013). "Generally, 'John Doe' pleadings cannot be used to circumvent statutes of limitations because replacing a 'John Doe' with a named party in effect constitutes a change in the party sued." *Id.* (internal quotation marks omitted). A plaintiff may amend his complaint to substitute a John Doe outside the statute of limitations only when, under Federal Rule of Civil Procedure 15, the amended pleading "relate[s] back to the date of the original complaint." *Id.* (internal quotation marks omitted).

In this case, Cruz brings, under § 1983, claims of false arrest, excessive force, and malicious prosecution. His arrest, and the alleged use of excessive force, occurred on March 29, 2012; therefore, the limitations period for the false arrest and excessive force claims expired on March 26, 2015. And because the charges against him were dismissed on October 4, 2012, the limitations period for his malicious prosecution claim expired on October 4, 2015. *See* Def. 56.1 at 3. Accordingly, Cruz could timely amend his complaint to add the true names of the Doe defendants only if his amended pleadings met the relation-back standards of Rule 15(c)(1)(C) or Rule 15(c)(1)(A). The Court addresses those standards now.

### a.     Rule 15(c)(1)(C)

Under Rule 15(c)(1)(C), for an otherwise untimely claim against a defendant to "relate back," four requirements must be met:

> (1) the claim must have arisen out of conduct set out in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party should have known that, but for a mistake of identity, the original action would have been brought against it; and . . . [4] the second and third criteria are fulfilled within 120 days of the filing

9

of the original complaint, and . . . the original complaint [was] filed within the
limitations period.

*Id.* (internal quotation marks omitted).  Here, Cruz, at a minimum, cannot satisfy the third

requirement, because "lack of knowledge of a John Doe defendant's name does not constitute a

mistake of identity."  *Hogan*, 738 F.3d at 518.  Rule 15(c)(1)(C) thus cannot salvage Cruz's

"John Doe" claims.

### b.    Rule 15(c)(1)(A)

Under Rule 15(c)(1)(A), an amended pleading may relate back "when the law that

provides the applicable statute of limitations allows relation back."  *See id.*  The Rules Advisory

Committee added Rule 15(c)(1)(A) in 1991 to "make . . . clear that [Rule 15] does not apply to

preclude any relation back that may be permitted under the applicable limitations law." *Id.*

(citing Fed. R. Civ. P. 15, Advisory Comm. Notes 1991).  Here, however, neither provision of

New York law relevant to the statute of limitations so permits.

First, under New York Civil Practice Law and Rules ("CPLR") § 1024,

> a plaintiff may commence a lawsuit against John Doe defendants and toll the
> statute of limitations as to the unnamed defendants provided that the plaintiff
> meets two requirements: (1) the plaintiff *exercised due diligence*, prior to the
> running of the statute of limitations, to identify the defendant by name;" and (2)
> the plaintiff described the John Doe party in such form as will fairly apprise the
> party that he is the intended defendant.

*Strada v. City of N.Y.*, No. 11 Civ. 5735 (MKB), 2014 WL 3490306, at *5 (E.D.N.Y. July 11,

2014) (internal quotation marks and alteration omitted) (emphasis added).  Here, Cruz would not

be able to add the names of the Doe defendants using CPLR § 1024 because, as discussed, he has

not exercised—and does not claim to have exercised any—due diligence.

Second, under CPLR § 203, claims brought against a new defendant "relate back" if:

> (1) the new claim arose out of the same conduct, transaction or occurrence as the
> original allegations; (2) the new party is united in interest with the original

defendant, and by reason of that relationship can be charged with such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits; and (3) the new party knew or should have known that, *but for a mistake as to the identity* of the proper parties, the action would have been brought against him as well.

*Strada*, 2014 WL 3490306, at \*6 (emphasis added). "New York courts have held, however, that a plaintiff may not add a new defendant under [§ 203] unless the new party knew or should have known that, but for an *excusable mistake* by plaintiff as to the identity of the proper parties, the action would have been brought against him as well." *Vasconcellos v. City of N.Y.*, No. 12 Civ. 8445 (CM), 2014 WL 4961441, at \*8 (S.D.N.Y. Oct. 2, 2014) (internal quotation marks omitted) (emphasis in original). The "excusable mistake requirement" of § 203 "closely tracks the federal relation-back requirement of Rule 15(c)(1)(C)." *Id.* For the reasons noted, however, Cruz fails to satisfy Rule 15(c)(1)(C). He therefore fails also to satisfy "the state's corollary to that rule." *Id.*

Cruz thus cannot invoke any relation-back doctrine, necessarily making untimely any future claims naming a defendant now identified as "John Doe." The Court therefore grants summary judgment to defendants on Cruz's claims against the John Doe defendants.

### C.      Federal Claims Against Donnelly

Defendants seek summary judgment on Cruz's three federal claims under § 1983 against Donnelly, who, given the earlier dismissal of Cruz's *Monell* claim against the City and the dismissal here of the federal claims against the John Doe defendants, is the sole remaining defendant. These claims are for excessive force, false arrest,[6] and malicious prosecution.

---

[6] As Cruz clarified in the April 25, 2016 conference, his Complaint brings a federal false imprisonment claim. The Court treats this as subsumed by Cruz's false arrest claim. *See Jenkins v. City of N.Y.*, 478 F.3d 76, 88 (2d Cir. 2007) ("False arrest is simply false imprisonment accomplished by means of an unlawful arrest. . . . 'False arrest and false imprisonment are largely synonymous because an imprisonment starts at the moment of arrest.'" (quoting 59 N.Y.

As to the excessive force claim, Donnelly argues that he lacked personal involvement in the events at issue. As to the false arrest claim, Donnelly argues that he lacked personal involvement in the arrest, that probable cause supported the arrest, and that he is entitled to qualified immunity. As to the malicious prosecution claim, Donnelly argues that the evidence cannot establish the element of actual malice, that probable cause supported the prosecution of Cruz, and that Donnelly is entitled to qualified immunity. The Court addresses these arguments in turn.

### 1.     Excessive Force

#### a.     Applicable Legal Standards

Section 1983 provides redress for a deprivation of federally protected rights by persons acting under color of state law. To prevail on a § 1983 claim, a plaintiff must establish (1) the violation of a right, privilege, or immunity secured by the Constitution or laws of the United States (2) by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155–56 (1978).

"Police officers' application of force is excessive, in violation of the Fourth Amendment, if it is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). This inquiry considers a number of factors, "including 'the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and

---

Jur. 2d False Imprisonment § 1)); *Williams v. City of N.Y.*, No. 10 Civ. 2676 (JG) (LB), 2012 WL 511533, at *2 (E.D.N.Y. Feb. 15, 2012) ("[A]lthough Williams has pleaded both false arrest and false imprisonment claims, I will treat them as a single claim for false arrest.").

whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Figueroa v. Mazza*, 825 F.3d 89, 105 (2d Cir. 2016) (citing *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 251–52 (2d Cir. 2001)).  The evaluation of a police officer's use of force must be from the perspective of a reasonable police officer at the incident, not from hindsight. *Graham*, 490 U.S. at 396.  "Even if defendants' actions were unreasonable under current law, qualified immunity protects officers from the sometimes hazy border between excessive and acceptable force." *Kerman v. City of New York*, 261 F.3d 229, 239 (2d Cir. 2001) (alterations, quotation marks, and citation omitted). "If the officer's mistake as to what the law requires is reasonable the officer is entitled to the immunity defense." *Id.* (quotation omitted). "[I]t is . . . well established that '[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'" *Mesa v. City of New York*, No. 09 Civ. 10464 (JPO), 2013 WL 31002, at *18 (S.D.N.Y. Jan. 3, 2013) (alterations in original) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

        "The right to effectuate an arrest does include 'the right to use some degree of physical coercion.'" *Mesa*, 2013 WL 31002, *18 (quoting *Esmont v. City of New York*, 371 F. Supp. 2d 202, 214 (E.D.N.Y. 2005). "Reasonable arrests tend to involve handcuffing the suspect, and handcuffs lose their effectiveness if they are not attached tightly enough to prevent the arrestee's hands from slipping out." *Id.* (quotation omitted). When a plaintiff suffers a *de minimis* injury, it is harder for the plaintiff to establish that the force used was excessive, *see Yang Feng Zhao v. City of New York*, 656 F. Supp. 2d 375, 390 (S.D.N.Y. 2009), although a sustained injury that necessitates doctors' visits is not a required element of an excessive force claim, *Robison v. Via*, 821 F.2d 913, 924 (2d Cir. 1987). And, "even if there is an issue of material fact as to the force

13

employed, summary judgment may still be appropriate on qualified immunity grounds, so long as the officers acted in an objectively reasonable manner, given the information available to them at the time they employed the force." *Mesa*, 2013 WL 31002, at *18 (citing *Landy v. Irizarry*, 884 F. Supp. 788, 798 (S.D.N.Y. 1995)).

"A prerequisite for any award [of] damage under 42 U.S.C. § 1983 for an alleged constitutional violation is the personal involvement of the defendant." *Celestin v. City of N.Y.*, 581 F. Supp. 2d 420, 428–29 (E.D.N.Y. 2008) (citation omitted); *see Warheit v. City of New York*, 271 Fed. App'x. 123, 126 (2d Cir.2008) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (internal quotation marks omitted)).

### b.    Discussion

Here, Cruz alleges that excessive force was used to effectuate his arrest when armed officers forcibly entered his apartment, pushed him against a wall, and threw him onto the ground. *See* Pl. Resp. 56.1 at 3–4. Donnelly argues that this claim fails because there is no evidence that he was personally involved in the acts allegedly constituting excessive force.

Summary judgment is warranted for Donnelly on this claim. It is undisputed that Donnelly was not personally involved in the actions Cruz challenges. Indeed, Cruz concedes that "[i]t is not alleged that Officer Donnelly personally exerted excessive force on the plaintiff." *Id.* at 4. Rather, he contends, it was "unidentified members of the New York City Police Department, not Officer Donnelly, [who] barged into [Cruz's] apartment with guns drawn[,] . . . slammed plaintiff against the wall and threw him onto the floor." *Id.* at 3–4. Cruz further admits that Donnelly did not enter the apartment until after "plaintiff was sitting in the entrance of the hallway of the apartment." *Id.* at 4. Cruz's failure to adduce evidence of Donnelly's personal

involvement in any use of excessive force requires granting summary judgment for Donnelly on the § 1983 excessive force claim against him. *See Warheit*, 271 Fed. App'x. at 126.

### 2.    False Arrest

Cruz's Complaint alleged that he was arrested without probable cause. *See* Compl. at 4. In his opposition to the defendants' motion for summary judgment, Cruz amplifies on his false arrest claim to separately argue that the arrest was also unlawful in that it violated *Payton v. New York*, 445 U.S. 573 (1980), which requires that arrests in a home, if not supported by an arrest warrant, be justified by exigent circumstances justifying a warrantless entry. Pl. Br. at 16–17. For the reasons below, the Court grants summary judgment in favor of Donnelly on this claim.

### a.    Applicable Legal Standards

The applicable legal principles are familiar. "A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996), *cert. denied*, 528 U.S. 946 (1999) (internal citations omitted); *accord Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007). Under New York law, a plaintiff bringing a claim for false arrest must show that "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (quoting *Broughton v. State of New York*, 335 N.E.2d 310, 314 (N.Y. 1975)) (internal quotation marks omitted).

As to the legal issues presented by Donnelly's motion for summary judgment:

1.    *Lack of personal involvement*:  To be liable for false arrest, a defendant must have

been personally involved in the arrest.  *See Celestin*, 581 F. Supp. 2d at 428–29; *Warheit*, 271

Fed. App'x. at 126.

2.    *Existence of probable cause*:  An arrest is privileged if supported by probable

cause.  *See Jocks v. Tavernier*, 316 F.3d 128, 135 (2d Cir. 2003); *Jenkins*, 478 F.3d at 84 ("The

existence of probable cause to arrest constitutes justification and is a complete defense to an

action for false arrest . . . ." (internal quotation marks and citation omitted)).  Probable cause

exists "when the arresting officer has knowledge or reasonably trustworthy information

sufficient to warrant a person of reasonable caution in the belief that an offense has been

committed by the person to be arrested." *Lacey v. Daly*, 26 F. App'x 66, 67 (2d Cir. 2001)

(summary order) (quoting *Singer*, 63 F.3d at 119) (internal quotation marks omitted).

Whether probable cause existed is a commonsense inquiry, based on the totality of the

circumstances, not on reflexive, isolated, or technical criteria.  *See, e.g.*, *Illinois v. Gates*, 462

U.S. 213, 232 (1983); *United States v. Falso*, 544 F.3d 110, 117 (2d Cir. 2008); *United States v.*

*Delossantos*, 536 F.3d 155, 159 (2d Cir. 2008).  The lawfulness of an arrest does not depend on

an ultimate finding of guilt or innocence.  *Pierson v. Ray*, 386 U.S. 547, 555 (1967); *Wiltshire v.*

*Wanderman*, No. 13 Civ. 9169 (CS), 2015 WL 4164808, at *3 (S.D.N.Y. July 10, 2015) (that

charges were later dropped is "irrelevant" to question of whether probable cause existed at time

of arrest).  Rather, "[w]hen determining whether probable cause exist[ed] courts must consider

those facts *available to the officer* at the time of the arrest." *Panetta v. Crowley*, 460 F.3d 388,

395 (2d Cir. 2006) (internal quotation marks and citation omitted) (emphasis in *Panetta*); *accord*

*Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) ("Whether probable cause exists depends upon

the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest.").

"[P]robable cause does not require an awareness of a particular crime, but only that some crime may have been committed." *Ackerson v. City of White Plains*, 702 F.3d 15, 20 (2d Cir. 2012) (internal quotation marks and citation omitted).  Thus, "it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest." *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006). "[A]n arrest is not unlawful so long as the officer ha[d] . . . probable cause to believe that the person arrested [] committed *any crime*." *Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007) (emphasis added).  So long as an arrest is supported by probable cause, a person may be arrested for a violation of any offense, no matter how minor, so long as that offense is a crime. *See, e.g.*, *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.").

In a lawsuit claiming false arrest, "[t]he burden of establishing the absence of probable cause rests on the plaintiff." *Berry v. Marchinkowski*, 137 F. Supp. 3d 495, 524 (S.D.N.Y. 2015) (internal quotation marks omitted).  The Court may determine, as a matter of law, whether probable cause existed where there is no dispute as to the pertinent events or the knowledge of the arresting officers. *Weyant*, 101 F.3d at 852.

3.    *Qualified immunity*:  Even if there was not probable cause to arrest the plaintiff, an officer will be entitled to qualified immunity if "arguable probable cause" existed—*i.e.*, if "a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in the light of well

17

established law." *Cerrone v. Brown*, 246 F.3d 194, 202–03 (2d Cir. 2001) (internal quotation marks and citation omitted).  The doctrine of qualified immunity provides a complete defense where "either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991); *accord Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 416 (2d Cir. 1999).  Its purpose is to "give[] government officials breathing room to make reasonable but mistaken judgments" and to protect "all but the plainly incompetent or those who knowingly violate the law." *City & Cty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)) (internal quotation marks omitted).

      4.     *Payton v. New York*:  Cruz's claim, finally, implicates *Payton v. New York*, under which, to lawfully arrest an individual in a private home based on probable cause, a police officer must act either pursuant to an arrest warrant or based on exigent circumstances justifying a warrantless entry.  445 U.S. 573 (1980); *see Kirk v. Louisiana*, 536 U.S. 635, 638 (2002) (per curiam); *see also Loria v. Gorman*, 306 F.3d 1271, 1283–84 (2d Cir. 2002) ("[E]ntry into [a defendant's] home and seizure of him without a warrant violate[s] a constitutional right unless justified by exigent circumstances."); *Morse v. Fitzgerald*, No. 10 Civ. 6306 (CJS), 2013 WL 1195036, at *7 (W.D.N.Y. Mar. 22, 2013) (rejecting officer's claim that warrantless arrest in private home, without exigent circumstances, was lawful because probable cause existed).[7]  To determine whether exigent circumstances justified such a warrantless entry, courts consider:

---

[7] As the Supreme Court has explained, "the Fourth Amendment has drawn a firm line at the entrance to the house." *Payton*, 445 U.S. at 590.  "[A]ny physical invasion of the structure of the home, 'by even a fraction of an inch,' [i]s too much" to be tolerated." *Kyllo v. United States*, 533 U.S. 27, 37 (2001) (quoting *Silverman v. United States*, 365 U.S. 505, 512 (1961)).  "No invasion of the sanctity of the home can be dismissed as *de minimis*," as "[a] sane, decent,

(1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) whether the suspect is reasonably believed to be armed; (3) a clear showing of probable cause . . . to believe that the suspect committed the crime; (4) strong reason to believe that the suspect is in the premises being entered; (5) a likelihood that the suspect will escape if not swiftly apprehended; and (6) the peaceful circumstances of the entry.

*Loria*, 306 F.3d at 1284 (internal quotation marks omitted). "These factors are intended not as an exhaustive canon, but as an illustrative sampling of the kinds of facts to be taken into account," and therefore "the presence or absence of any single factor is not dispositive." *Id.* Ultimately, "[t]he essential question in determining whether exigent circumstances justified a warrantless entry is whether law enforcement agents were confronted by an urgent need to render aid or take action." *Id.* (internal quotation marks omitted).

### b.  Discussion

Cruz's false arrest claim against Donnelly founders on the personal involvement element. Cruz's claim that Donnelly was personally involved in his arrest rests on the facts that Donnelly (1) was listed as the "arresting officer" in arrest records, (2) "process[ed] [Cruz] throughout the arrest process," including by driving him from his apartment to the precinct, and (3) "ultimately signed under oath the criminal court complaint charging [Cruz] with extremely serious drug felonies." Pl. Br. at 18; *see* Pl. Resp. 56.1 at 37; Dkt. 36-3 at 9.  But Cruz concedes that Donnelly was not among the group of officers that initially "barged into his apartment with guns drawn," placed him in handcuffs, and then "threw him onto the floor." Pl. Resp. 56.1 at 3–4; *see*

---

civilized society must provide some . . . oasis, some shelter from public scrutiny, some insulated enclosure, some enclave, some inviolate place which is a man's castle." *Loria*, 306 F.3d at 1284 (internal quotation marks omitted).  In the context of warrantless arrests, "where law enforcement officers summon a suspect to the door of his home and place him under arrest while he remains within his home, in the absence of exigent circumstances, *Payton* is violated regardless of whether the officers physically cross the threshold." *United States v. Allen*, 813 F.3d 76, 88–89 (2d Cir. 2016).

Pl. Br. at 8. Cruz further concedes that Donnelly did not even enter Cruz's apartment until some later point, by which Cruz was already "sitting in the entrance of the hallway of the apartment." Pl. Resp. 56.1 at 4.

This evidence supplies an insufficient basis on which a reasonable jury could find that Donnelly was personally involved in the arrest. Rather, on the undisputed facts, Donnelly did not come into contact with Cruz until after Cruz had been arrested. "An arrest occurs when an individual is restrained and his freedom of movement is restricted," and thus "[t]he pertinent inquiry is whether, 'in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *Dallas v. Goldberg*, No. 95 Civ. 9076 (WHP), 2000 WL 1092986, at *6–7 (S.D.N.Y. Aug. 4, 2000) (quoting *Posr v. Doherty*, 944 F.2d 91, 97 (2d Cir. 1991)). Based on Cruz's account, by the time Donnelly entered the apartment, Cruz had already been slammed into a wall, handcuffed, and thrown onto the floor by multiple armed officers who entered his apartment. By then, he was clearly not "free to leave" and, unavoidably, had been arrested. *See Dallas*, 2000 WL 1092986, at *6.

That Donnelly later transported Cruz to the precinct and signed the Criminal Complaint against Cruz does not change this result, as the decision in *Dallas v. Goldberg,* 2000 WL 1092986, granting summary judgment for a defendant police officer on a false arrest, illustrates. The officer there had participated in a raid on the house in which the plaintiff resided and later signed the criminal complaint against him. *Id.* at *6. But, the court held, the plaintiff had been "arrested—falsely or not—long before [the defendant] signed any accusatory instrument." *Id.* Specifically, the plaintiff had been arrested at the moment that "officers pinned him to the ground, pointed guns at his head and placed him in handcuffs." *Id.* Because the officer attested that "she arrived on the scene after plaintiff was on the ground in handcuffs," and because the

plaintiff did not adduce evidence to the contrary, the court held that the plaintiff had failed to establish the defendant's personal involvement in the arrest. *Id.* at *6–7.

To be sure, here, there is a factual dispute as to a discrete aspect of the events preceding the arrest. As discussed, Donnelly attests that he waited outside the building and did not enter until receiving a radio call from another officer stating that Cruz had signed for the package, Def. Br. 11, whereas Cruz argues—based on Donnelly's attestation in the Criminal Complaint that he personally saw Cruz sign for the package and heard Cruz make a statement, *see* Dkt. 29-8 at 1— that Donnelly was inside the building during the delivery. But even crediting that Donnelly was present at the point Cruz signed for the package, that would not affect the result here, because there is no evidence that Donnelly participated in the arrest that followed the delivery. Indeed, if anything, Donnelly's involvement in the controlled delivery presents a more tenuous claim of personal involvement than in *Dallas*, where the defendant's participation in the raid was not sufficient to establish his personal involvement in the arrest. *See Dallas*, 2000 WL 1092986, at *6.

Because the evidence cannot support, other than by speculation, a finding of personal involvement by Donnelly in Cruz's arrest, on this basis, the Court grants summary judgment to Donnelly on Cruz's false arrest claim.[8] The Court, accordingly, has no occasion to reach Donnelly's alternative arguments for summary judgment on this claim, including based on the assertion that probable cause supported the arrest and that Donnelly enjoys qualified immunity.

### 3.   Malicious Prosecution

#### a.   Applicable Legal Standards

---

[8] This is so regardless whether the claim of false arrest is based on the asserted lack of probable cause to arrest or on the arresting officers' asserted non-compliance with *Payton*.

To succeed on a malicious prosecution claim under § 1983, a plaintiff must establish the elements of a malicious prosecution claim under New York law along with a violation of her rights under the Fourth Amendment. *Manganiello v. City of New York*, 612 F.3d 149, 160–61 (2d Cir. 2010). As such, a plaintiff must show that (1) the defendant commenced or continued a criminal proceeding against the plaintiff; (2) the proceeding was terminated in the plaintiff's favor; (3) there was no probable cause for commencing the proceeding; (4) the proceeding was instituted with "actual malice"; and (5) there was a post-arraignment liberty restraint sufficient to implicate the plaintiff's Fourth Amendment rights. *McKay v. City of New York*, 32 F. Supp. 3d 499, 511 (S.D.N.Y. 2014) (quoting *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000) (internal quotation marks omitted)); *accord Droz v. McCadden*, 580 F.3d 106, 109 (2d Cir. 2009); *Drummond v. Castro*, 522 F. Supp. 2d 667, 677 (S.D.N.Y. 2007). As to the fourth requirement, "malice may be shown by proving that the prosecution complained of was undertaken from improper or wrongful motives, or in reckless disregard of the rights of the plaintiff." *Manganiello*, 612 F.3d at 163 (internal quotation marks omitted).

The existence of probable cause is a complete defense to a malicious prosecution claim. *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003). And the existence of arguable probable cause entitles the officer to qualified immunity for such a claim. *McKay*, 32 F. Supp. 3d at 511 (citing *Betts v. Shearman*, 751 F.3d 78, 83 (2d Cir. 2014)). Further, because the focus of the qualified immunity inquiry is whether the actions of the defendant officer were objectively reasonable, an officer's subjective motivations with regard to the prosecution will not rescue a malicious prosecution claim when there was arguable probable cause for the charge on which the prosecution was based. *Bonide Prods., Inc. v. Cahill*, 223 F.3d 141, 146 (2d Cir. 2000). As such, an officer with an objectively reasonable belief that an arrest was supported by probable

cause is entitled to qualified immunity against a claim of malicious prosecution arising out of the arrest, *id.*, so long as the officer does not learn of facts that would negate the earlier determination of probable cause, *Cooper v. City of New Rochelle*, 925 F. Supp. 2d 588, 611 (S.D.N.Y. 2013).

### b.    Discussion

Cruz's theory is that Donnelly maliciously prosecuted him by (1) manufacturing the claims that Cruz had signed for the package in his presence and made statements associating himself with the package, and (2) swearing out a criminal court complaint containing those false claims. These, he claims, resulted in a magistrate's finding probable cause to prosecute Cruz for his receipt of drugs and setting bail conditions that resulted in Cruz's being in custody for two weeks following his arraignment and his being subject to prosecution from March 29, 2012 to October 4, 2012, when the case against him was dismissed. In pursuing summary judgment, Donnelly argues that (1) the evidence cannot support a finding of actual malice, (2) the prosecution was supported by probable cause, and (3) he is entitled to qualified immunity.[9]

As to actual malice, there is sufficient evidence from which a jury could infer actual malice on Donnelly's part. In the Criminal Complaint, Donnelly swore that he personally had seen Cruz sign for the package and personally had heard Cruz make a statement associating himself with the package. *See* Criminal Complaint at 1. But in his deposition in this lawsuit, Donnelly disavowed making either of these observations. He testified that he meant to convey in the Criminal Complaint that he was relating the observations of a different officer who had been

---

[9] Donnelly does not dispute that there is evidence to support the other elements of a malicious prosecution claim, namely, that he commenced or continued a criminal proceeding against Cruz; that the proceeding was terminated in Cruz's favor; and that Cruz's Fourth Amendment rights were implicated by a post-arraignment restraint on his liberty. *See McKay*, 32 F. Supp. 3d at 511.

a percipient witness to these events, which observations in turn were communicated to him. Donnelly Dep. at 8, 11. Donnelly argues in submissions to this Court that it was an inadvertent "clerical error" for the Criminal Complaint to identify himself as having been present for these events. *See* Def. Br. 14.

A reasonable jury, hearing Donnelly's testimony, could certainly credit that Donnelly's statements in the Criminal Complaint were innocently inexact insofar as they suggested that he (the "deponent") had personally been present for Cruz's signature and statement. But a reasonable jury could find the opposite. Notably, Cruz denied either signing for the package or making the statement attributed to him. Cruz Dep. at 40–42. A reasonable juror, crediting Cruz, could alternatively find that Donnelly invented these observations, and is accountable for the sworn complaint in which he identified himself as the eye- and ear-witness to them. A jury that found such a fabrication could reasonably infer from the making of these admitted falsehoods either an improper motive on Donnelly's part, or a reckless disregard of Cruz's rights, *see Manganiello*, 612 F.3d at 163. There is, therefore, enough evidence on which a jury could find the element of actual malice.

As to the element of probable cause, a reasonable jury could also find in Cruz's favor on this element. Donnelly argues that even if it was another officer, not he, that saw Cruz sign for the package containing the narcotics and heard Cruz make a statement associating himself with it, those observations supply the necessary probable cause. He notes that the law shields an officer "from liability for false arrest if the officer relies on a fellow officer who vouches for probable cause." *Golphin v. City of N.Y.*, No. 09 Civ. 1015 (BSJ), 2011 WL 4375679, at *2 (S.D.N.Y. Sept. 19, 2011).

But Donnelly's premise that a jury must inexorably credit that *some* officer observed Cruz's signing of the package and his incriminating statement is simply wrong.  On Donnelly's motion for summary judgment, the Court must consider the admissible evidence in the light most favorable to *Cruz*, the non-movant.  Cruz denies signing for the package or making the statement about it.  Cruz Dep. at 40–42.  Moreover, Donnelly has not identified either the officer who purportedly saw and heard these actions or the officer who purportedly related them to Donnelly, let alone come forward with a declaration from such an officer attesting to these events.  *See* Def. 56.1 at 2.  Under these circumstances, while a jury could find with Donnelly that Cruz signed for the package and made the statement at issue, it certainly could also find the opposite—that is, that these actions on Cruz's part associating himself with the package did not occur, that no officer saw or heard them occur, and/or that no officer conveyed to Donnelly that they had occurred.

With the two disputed acts by which Cruz purportedly associated himself with the package removed from the summary judgment equation, the issue then is whether the undisputed facts of the case establish probable cause to arrest Cruz.  Donnelly suggests that, despite Cruz's not having done anything to associate himself with the package, probable cause to arrest him is established by the fact that the package containing cocaine was (as the Homeland Security and U.S. Customer Border Protection receipts reflect) addressed to Cruz at his home. Dkt. 29, Ex. A; Dkt. 19, Ex. B.  Donnelly, however, has not cited any case authority to the effect that the fact that a package containing narcotics is addressed to a person at his or her home alone supplies probable cause to arrest.  On the contrary, the reported cases upholding arrests arising out of controlled deliveries uniformly appear to have involved circumstances in which the arrestee took some step to associate himself with the package. *See, e.g.*, *Spencer v. Connecticut*, 560 F. Supp.

2d 153, 162 (D. Conn. 2008) (finding probable cause where, "[d]uring a 'controlled delivery,' the Plaintiff, in full view of the police, *accepted, took possession of, and placed in his residence* a parcel containing a significant amount of marijuana" (emphasis added)); *United States v. Gore*, No. 94 Crim. 282 (LMM), 1994 WL 698274, at *1 (S.D.N.Y. Dec. 13, 1994) ("[T]he address on the package, *and defendant's acceptance of the package* . . . gave probable cause to believe that defendant was the intended recipient of the package (which the agents already knew to contain cocaine)" (emphasis added).).

For much the same reasons, the Court cannot find, at the summary judgment stage, that Donnelly is necessarily entitled to qualified immunity. The defense has not cited any authority that would permit a finding of arguable probable cause to arrest based on solely on the fact that the package was addressed to Cruz. And, as a matter of public policy, categorically insulating officers from liability for arresting persons to whom packages of contraband were addressed, where no other facts associated the addressee with the package and where the addressee dissociated himself with the package,[10] is problematic for obvious reasons.

Moreover, Cruz has offered evidence on which a jury could find that Donnelly fabricated incriminating evidence—to wit, that Cruz signed for and verbally associated himself with the package. And under clearly established law, such fabrication, if established, would supply a basis for liability for malicious prosecution. "Like a prosecutor's knowing use of false evidence to obtain a tainted conviction, a police officer's fabrication and forwarding to prosecutors of known false evidence works an unacceptable corruption of the truth-seeking function of the trial process." *Manganiello*, 612 F.3d at 162 (2d Cir. 2010) (internal quotation marks omitted).

---

[10] While the parties disagree about whether Cruz signed for or verbally associated himself with the package, they agree that Cruz "initially responded that nothing was ordered and that he was not expecting any packages." *See* Def. 56.1 at 2; Pl. Resp. 56.1 at 3.

"When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997). "Qualified immunity is unavailable where, as here, the action violates an accused's clearly established constitutional rights, and no reasonably competent police officer could believe otherwise." *Id.*; *see also Golino*, 950 F.2d at 871 ("Where an officer knows, or has reason to know, that he has materially misled a magistrate on the basis for a finding of probable cause, as where a material omission is intended to enhance the contents of the affidavit as support for a conclusion of probable cause, . . . the shield of qualified immunity is lost." (citations omitted)).

## CONCLUSION

For the foregoing reasons, the Court grants defendants' motion for summary judgment on all of Cruz's claims, except for his malicious prosecution claim under § 1983 against Donnelly. That claim survives and, barring settlement, will proceed to trial.

The Court directs counsel to meet and confer in person by Friday, February 17, 2017, to discuss potential settlement of this matter, and to submit a letter to the Court by Tuesday, February 21, 2017, reporting on whether the case has settled. If it has not, the Court will set a prompt schedule for the submission of a joint pretrial order and other pretrial submissions and will, thereafter, set a trial date.

The Clerk of Court is respectfully directed to close the motion pending at Dkt. 28.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: February 8, 2016
       New York, New York